25 - 6 6 9

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ELIZABETH COADY,

Plaintiff,


v.


Donald J. TRUMP,  President of the United States in his individual and official capacity;


Barack Obama,  former President of the United States in his individual and official capacity;


Michael Kratsios, Director of White House Office of Science and Technology Policy, in his individual and official capacity;


Pete Hegseth, Secretary of Defense, in his individual and official capacity;


The Department of Defense;


Jim Jordan, Chairman of the US House Judiciary Committee and Weaponization subcommittee, in his individual and official capacity;


Robert F. Kennedy, Secretary of U.S. Health and Human

Services, in his individual and official capacity;

Dr. Jay Bhattacharya, Director of National Institutes of Health in his individual and official capacity;

The National Institutes of Health;

Dr. John Ngai, Director of NIH Brain Initiative in his individual and official capacity;

Dr. Walter Koroshetz, his individual and official capacity as Director of the National Institute of Neurological Disorders and Stroke;

The National Institute of Neurological Disorders and Stroke;

Dr. Christine Grady, Chief of the Department of Bioethics at the National Institutes of Health, in her individual and official capacity;

Janet Petro, Acting Director of National and Space Administration (NASA) in her individual and official capacity;

Pam Bondi, Attorney General of the U.S. Department of Justice, in her individual and official capacity;

William Barr, former Attorney General of U.S. Department of Justice, in his individual and official capacity;

Eric Holder, former Attorney General of U.S. Department of

Justice, in her individual and official capacity;

Kash Patel, Director of Federal Bureau of Investigation, in his individual and official capacity;

Christopher Wray, former Director of Federal Bureau of Investigation, in his individual and official capacity;

Federal Bureau of Investigations;

John Ratcliffe, Director of Central Intelligence Agency, in his individual and official capacity;

William Burns, former Director of Central Intelligence Agency, in his individual and official capacity;

Central Intelligence Agency

Sunday Pichai, Chief Operating Officer of Alphabet in his individual and official capacity;

Alphabet, Inc.;

Google, Inc.;

Elon Musk, Chief Operating Officer of Tesla, SpaceX, Starlink, xAI, Neuralink and The Boring Company, Chief Technology Officer of X.com, in his individual and official capacity;

Tesla, Inc.;

Neuralink, Inc.;

XAI, Inc.,

Peter Thiel,  Chairman of Palantir, Inc. In his individual

and official capacity;

Blackrock Neurotech, Inc.;

Bill Gates, Chairman of The Bill & Melinda Gates Foundation,  in his individual and official

capacity;

The Bill & Melinda Gates Foundation;

IBM;

Satya Nadella, Chief Operating Officer of Microsoft, Inc. in his individual and official

capacity;

Microsoft, Inc.;

Jeff Bezos, CEO of Amazon in his individual and official capacity;

Amazon, Inc.;

Northrup Grumman;

Harvard University;

Stanford University;

Massachusetts Institute of Technology;

Princeton University;

University of Pennsylvania;

University of California at Davis;

Mayor Bradley Johnson, Mayor of City of Chicago, in his individual and official capacity;

Dean Harrison, Chief Executive Office of Northwestern Memorial Healthcare, in his individual and official capacity;

Howard Chrisman, Chief Executive Office of Northwestern Memorial Healthcare, in his individual and official capacity;

Dr. Steven Flamm;

Dr. Kiran Nimmaggadda;

Dr. Kenneth Arbetter;

Jane Doe;

Dr. John Doe;

DEFENDANTS

Case No.:

COMPLAINT FOR A CIVIL CASE

---

#### COMPLAINT

I. INTRODUCTION

1. Plaintiff, Elizabeth Coady, proceeding pro se, respectfully but urgently brings this action

seeking injunctive relief, compensatory damages, and punitive damages for violations of

her constitutional and statutory rights stemming from nonconsensual implantation of and

suffering from experimental biomedical devices, including a Neuralink "beta" prototype, in

her body between 2013 tolling through to 2025.

2. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) based on claims

arising under 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendments, the

Administrative Procedure Act (5 U.S.C. § 706), the Torture Victim Protection Act (TVPA), and

international law, including the Nuremberg Code and the UN Convention Against Torture.

3. Venue is proper under 28 U.S.C. § 1391(b) because

corporate Defendants are incorporated in Delaware, and  substantial part of the events

giving rise to the claims occurred in connection with Delaware-incorporated entities.

II. PARTIES

4. Plaintiff, Elizabeth Coady, is a 64-year-old retired journalist with a master's degree in

library and information science who has been traumatized, financially, socially and

physically harmed, facially deformed and made homeless due to Defendants' political,

physical and financial targeting and  nonconsensual experimentation, hidden under

falsified "wraparound" Foreign Intelligence Surveillance Applications and falsified medical diagnoses.

5. Defendants are:

a. Donald J. TRUMP, President of the United States in his individual and official capacity;

b. Barack Obama, former President of the United States in his individual and official capacity;

c. Michael Kratsios, Director of the White House Office of Science and Technology, in his individual and official committee;

d. Pete Hegseth, Secretary of Defense, in his individual and official capacity;

e. The Department of Defense;

f. Jim Jordan, Chairman of the US House Judiciary Committee and Weaponization

subcommittee, in his individual and official capacity;

g.  Robert F. Kennedy, Secretary of U.S. Health and Human Services, in his individual and

official capacity;

h. Dr. Jay Bhattacharya, Director of National Institutes of Health in his individual and official

capacity;

i. The National Institutes of Health

j. Dr. John Ngai, Director of NIH Brain Initiative in his individual and official capacity;

k. Dr. Walter Koroshetz, his individual and official capacity as Director of the National

Institute of Neurological Disorders and Stroke;

l. The National Institute of Neurological Disorders and Stroke;

m. Dr. Christine Grady, Chief of the Department of Bioethics at the National Institutes of Health,  in her individual and official capacity;

n. Janet Petro, Acting Director of National and Space Administration (NASA) in her individual and official capacity;

o. Pam Bondi, Attorney General of U.S. Department of Justice, in her individual and official capacity;

p. William Barr,  former Attorney General of U.S. Department of Justice, in her individual and official capacity;

q. Eric Holder, former Attorney General of U.S. Department of Justice, in her individual and official capacity;

r.  U.S. Department of Justice

s. Kash Patel, Director of  Federal Bureau of Investigations, in his individual and official capacity;

t. Christopher Wray, former Director of Federal Bureau of Investigations, in his individual and official capacity;

u. Federal Bureau of Investigations;

v. John Ratcliffe,  Director of Central Intelligence Agency, in his individual and official capacity;

w.  William Burns, former Director of Central Intelligence Agency, in his individual and official capacity;

x. Central Intelligence Agency

y. Sunday Pichai, Chief Operating Officer of Alphabet in his individual and official capacity;

z. Alphabet, Inc.;

aa. Google, Inc.;

bb. Elon Musk, Chief Operating Officer of Tesla, SpaceX, Starlink, Neuralink, X, and The Boring Company, in his individual and official capacity;

cc. Tesla, Inc.;

dd. Neuralink, Inc.;

ee. XAI, Inc.;

ff. Peter Thiel,  Chairman of Palantir, Inc. in his individual and official capacity;

gg. Blackrock Neurotech, Inc.;

hh. Bill Gates, Chairman of The Bill & Melinda Gates Foundation,  in his individual and official capacity;

ii. The Bill & Melinda Gates Foundation;

jj. IBM;

kk. Satya Nadella, Chief Operating Officer of Microsoft, Inc. in his individual and official capacity;

ll. Microsoft, Inc.

mm. Jeff Bezos, CEO of Amazon in his individual and official capacity;

nn. Amazon, Inc.

oo. Northrup Grumman;

pp. Harvard University;

qq. Stanford University;

rr. Massachusetts Institute of Technology;

ss. Princeton University;

tt. University of Pennsylvania;

uu. University of California at Davis;

vv. Mayor Bradley Johnson, Mayor of City of Chicago, in his individual and official capacity;

ww. Dean Harrison, Chief Executive Office of Northwestern Memorial Healthcare, in his individual and official capacity;

xx. Howard Chrisman, Chief Executive Office of Northwestern Memorial Healthcare, In his individual and official capacity;

yy. Dr. Steven Flamm;

zz. Dr. Kiran Nimmaggadda;

aaa. Dr. Kenneth Arbetter;

bbb. Jane Doe

ccc. Dr. John Doe

III. FACTUAL ALLEGATIONS

6. Between 2013 and 2014, and again in 2022, Defendants, acting under color of state law

and in concert with private entities, nonconsensually implanted Plaintiff with experimental

biomedical and biosurveillance devices, including "injectable electronics" and a Neuralink

"beta" prototype, on multiple dates between 2013-2014 at Northwestern Memorial

Hospital in Chicago, and on October 3, 2022 at a private surgery center in Mexico City

under the direction of government and private agents of the DARPA Brain Initiative.

7. These biomedical or 'biosurveillance' devices, activated remotely via Wi-Fi and

Bluetooth and radioactive 'nanoswarms' released via aerosols, have caused Plaintiff severe

and ongoing harm since August 2013 through today, including:

  a. Persistent radiation burns;

  b. Electrical shocks and sparks;

  c. Sonic blasting in the interior of Plaintiff's left skull and face;

  d. Poisoning via aerosol "nanoswarm" attacks used on US targets as revealed by DARPA

scientist Dr. James Giordano;

  e. Psychological trauma and distress;

f. Facial disfigurement;

g. Sexual arousal;

h. Mental cognitive decline;

i. Radiological and chemical assaults;

j. Around-the-clock invasion of privacy for 12 years, with        Plaintiff's voice broadcast on radio frequencies to 'listening' stations maintained for military, intelligence, and first responders' use.

8. Plaintiff alleges Defendants collect, distribute, and profit from her cognition, constituting torture and a violation of her bodily autonomy, privacy, and constitutional rights.

9. These biomedical devices were implanted under falsified

Foreign Intelligence Surveillance Act (FISA) authorizations, causing Plaintiff to live a

"Logan's Run" existence  for 12 years of constant physical and psychological  attack,

surveillance,  assault and harm. She is assaulted by drone satellites, Wi-Fi, bioagents and

aerosolized  'nanoswarms,' as Dr. James Giordano describes brain assaults and the

methods being used in his lecture video, 'The Brain Is The Battlefield of the 21st Century.'

10. In addition to extreme intracranial and bodily assaults, Plaintiff has suffered threats of

retaliation, including harm to her family, if she pursues this lawsuit.

11. Radiologic medical imaging performed at Hospital Angeles in Mexico City, Mexico

confirms "foreign" materials in Plaintiff's skull, chest and arm, and a 2015 SCADA

Frequency Allocation test by Melinda Kidder of Columbia Investigations, Missouri,

confirmed frequencies emanating from 11 points throughout Plaintiff's body.

12. Desperate to document the illegal implantation that hospitals and physicians criminally

implanted and conspired to conceal, Plaintiff eventually sought help from body piercers, at

least seven of whom removed foreign materials from Plaintiff's skull  including pieces of

silver-colored metals, metal mesh, fluid-filled rubber capsules, superglue fixative, 4mm

steel ball and other inorganic materials. Plaintiff has the bulk of these materials in storage

in Ilinois.

13. Plaintiff has been informed by five physicians and one

body piercer that state actors contacted them after their initial contact with Plaintiff and

warned them not to have any further contact with her, and to not remove any technology

from her body, under threat of harm to their families.

14. Plaintiff is certain this same directive was delivered to other healthcare officials and

physicians who were too frightened to report the interventions to her but telescoped their

fear to her by their reactions in subsequent contact with Plaintiff.

15. Plaintiff faces certain imminent death either through cancer or suicide -- suicide being

the actual designed  protocol of the Darpa Brain Initiative -- because activation of the

Neuralink or 'brain-to-computer' implants were increased to unsustainable levels for any

human being to endure on January 20, 2025, when President Trump resumed office of the

President.

16. Plaintiff believes the increased levels of torture derives from Defendant Trump's

financial, physical and social media endorsements of Defendant Musk who owns the

Neuralink prototype and profits from Plaintiff's brain data.

17. Devices were implanted in Plaintiff on at least four separate occasions by Northwestern

Memorial physicians between January 2013 and July 2014.

18. Three Northwestern physicians -- Dr. Steven Flamm, Dr. Kenneth Arbetter, Dr. Kiran

Nimmaggada, conspired with

federal, local and state actors to implant Plaintiff personally and/or create implantation

opportunities for others by concocting unnecessary reasons to put Plaintiff under

anesthesia.

19. A fourth and fifth persons,  an ultrasound technician identified here as Jane Doe, and a

visiting physician identified here as Dr. John Doe who accompanied Dr. Flamm during a

biopsy, also implanted Plaintiff during 2013 procedures. Plaintiff is certain that Dr. John

Doe implanted the bulk of the nonconsensual biotechnology, as the biopsy he attended

lasted more than four hours, whereas previous biopsies Plaintif underwent lasted less than

an hour.

20. Defendants have criminally  conspired to  torment and destroy Plaintiff for 12 years in

myriad and shocking ways for political revenge and commercial gain with the INTENT to

force her to suicide. Defendants Patel and Wray are directly responsible for this 'nudging ' through the use of surveillance role players and semiotics. Defendants NASA and Department of Defense are responsible by the nonstop assaults of Plaintiff with electromagnetic weapons and 5G.

21. While torture increased by orders of magnitude on January 20, 2025, since Plaintiff has sought to prepare her own pro se civil action, the torment has jumped up dramatically again to unsustainable levels.

IV. CAUSES OF ACTION

Count 1: Violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments)

22. Plaintiff incorporates paragraphs 1–21 by reference.

23. Defendants, acting under color of state law, violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, Fifth Amendment right to due process

and Fourteenth Amendment right to bodily integrity by nonconsensually implanting devices that monitor and manipulate her cognition and body.

24. These actions constitute battery and unlawful intrusion, as established in Rochin v. California, 342 U.S. 165 (1952).

Count 2: Violation of the Torture Victim Protection Act (TVPA)

25. Plaintiff incorporates paragraphs 1–21 by reference.

26. Defendants' nonconsensual implantation and activation of devices causing severe pain, facial disfigurement and suffering constitute torture under the TVPA, as supported by Al-Zubae v. CACI (2008–2024).

Count 3: Violation of International Law (Nuremberg Code, UN

Convention Against Torture, ICCPR)

27. Plaintiff incorporates paragraphs 1–21 by reference.

28. Defendants' actions violate the Nuremberg Code's requirement for voluntary consent in medical experiments, the UN Convention Against Torture's prohibition on cruel, inhuman, or degrading treatment, and Article 7 of the International Covenant on Civil and Political Rights (ICCPR).

LEGAL STANDARD

Under Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), a plaintiff seeking injunctive relief must show:

 (1) likelihood of success on the merits;

 (2) irreparable harm absent relief;

 (3) the balance of equities favors the plaintiff; and

 (4) the public interest supports relief.

ARGUMENT

A. Likelihood of Success on the Merits

29. Plaintiff is likely to succeed on their claims under 42 U.S.C. § 1983, as Defendants,

acting under color of state law, violated Plaintiff's Fourth and Fourteenth Amendment rights

by implanting more than 20 devices without consent, an

intrusion into bodily integrity and constitute unlawful search and seizure. See Rochin v.

California, 342 U.S. 165 (1952).

30. Mohr v. Williams (1905, Minnesota Supreme Court) established that performing a

medical procedure without specific consent constitutes battery, setting a foundational

precedent for bodily autonomy, emphasizing that any unauthorized invasive procedure,

including implantation, violates a patient's rights. The principle remains robust in modern

law.

31. Pratt v. Davis (1905, Illinois Appellate Court) reinforced that performing an invasive

procedure without specific consent is battery. This applies to nonconsensual implantation

of devices if done explicitly without patient approval.

32. Schloehndorff v. Society of New York Hospital (1914, New York Court of Appeals)

solidified the principle of informed consent, stating that 'every human being of adult years

and sound mind has a right to determine what shall be done with his body.' Nonconsensual

implants of medical devices intended to enable torture, steal cognition and other

biological data violates this principle as it involves an invasive act without permission.

33. Mink v. University of Chicago (1979, U.S. District Court, Northern District of Illinois)

found that medical treatment without consent constitutes battery. In Plaintiff's case, her

life is literally in danger as devices and materials implanted

interiorly and activated remotely just as are mobile phones, GPS devices and other

wireless devices, are being activated at the highest levels she has been forced to endure

since Donald Trump returned to office on January 20, 2025.

34. Canterbury v. Spence and Cobbs v. Grant further defined informed consent, requiring physicians to disclose material risks and obtain explicit permission. Plaintiff's numerous nonconsensual devices are an extreme and criminal violations of this standard.

35. Winston v. Lee (471 U.S. 1, 1985): The Supreme Court held that a compelled surgical procedure to remove a bullet violated the Fourth Amendment due to its intrusiveness, balancing individual privacy against government interests. This case bolsters Plaintiff Coady's argument that nonconsensual implantation of a brain-to-computer interface is an unqualified unreasonable search.

36. In Skinner v. Railway Labor Executives' Assn. (489 U.S. 602, 1989), the Court recognized that bodily intrusions (e.g., drug testing) can constitute searches under the Fourth Amendment, requiring balancing of privacy and governmental interests. Plaintiff asserts the U.S. government nor any private entity has any right to her interior mind or cognition.

37. The deliberately deceptive and criminal manner in which Plaintiff was nonconsensually implanted with devices is prima facie evidence of Defendants' willfully and wantonly

depriving Plaintiff of her Constitutional rights to privacy, due process and freedom from cruel and unusual punishment as set forth in Screws v. United States, 325 U.S. 91 (1945)

38. In Smith v. Wade, 461 U.S. 30 (1983), the Supreme Court

held that government officials are not shielded from liability from civil damages and that

punitive damages may be awarded when their conduct has been shown to be "motivated

by evil motive or intent," as will be evidently proved in Plaintiff's case.


39. Harlow v. Fitzgerald, 457 U.S. 800 (1982) applies as Defendants' actions egregiously

and shockingly violated and continue to violate Plaintiff's Constitutional rights as well the

Nuremberg code and the standards of sane human beings worldwide.


40. Thompson v. Connick, 563 F. 3d 111 (5th Cir. 2009) holds that public officials' reckless

disregard for the truth stripes them of immunity, particularly when Plaintiff's rights have

been shockingly suppressed since 2013. Defendants have blatantly ignored Plaintiff's

Constitutional rights despite her repeated appeals to them via emails, phone calls, tweets

and texts. Defendants' outrageous and deliberate denial of Plaintiff's Constitutional rights

must rightly strip them of immunity.


41. Al Shimari v. CACI (Abu Graib Case, 2008-2024) established that private corporations

can be held civilly liable for torture and set a precedent for accountability under the

Torture Victim Protection Act (TVPA) for human rights abuses by private entities.

42. In Abdullahi v. PFIZER, INC. (2009), the Second Circuit ruled that nonconsensual experimentation by private corporation violated customary international law and thus can be actionable under the Alien Tort Statute, the U.S. Constitution and international law.

43. In Doe v. Sullivan (1976), an Oregon District Court ruled that nonconsensual experimentation on prisoners could constitute a constitutional violation.

44. Rochin v. California (1952) found that nonconsensual experimentation by government actors may violate substantive due process if it 'shocks the conscience,' a threshold unequivocally met in Plaintiff's complaint.

45. Beyond the borders of the United States, the establishment of the Nuremberg Code (1947) mandated voluntary consent for medical experiments. That the United States government is flouting this international standard covertly while boasting worldwide of being a protector and defender of human rights and U.S. Constitutional liberties is both a betrayal of American citizens and values and is tantamount to criminal canard.

https://x.com/DNIGabbard/status/1922395281561420039

46. The UN Convention Against Torture asserts nonconsensual experimentation causing severe pain or

suffering can constitute torture or cruel, Inhuman, or Degrading Treatment. CAT applies to state actors but can extend to private entities acting under state authority.

47. Article 7 of The International Covenant on Civil and Political Rights (ICCPR) prohibits medical or scientific experimentation without consent, binding signatories including the United States.

48. The Torture Victim Protection Act allows civil suits against individuals for torture or extrajudicial killings.

49. This civil complaint affords this Court the opportunity to establish boundaries for the 21st century's Brave New World of 'biosurveillance,' and to assert that neither state actors nor corporate entities have a legal or commercial right to run roughshod over individual American citizens in depraved experiments to obtain brain and other biological data for 'precrime policing,' or state or corporate artificial intelligence databases or algorithms, particularly from those targeted for political targeting.

50. While state actors are often granted qualified immunity, the brazen and demented

criminality of the experimentation and torture of Plaintiff must compel this Court to deny

such legal cover to state perpetrator actors.


51. While the issue of cognitive privacy and rights has not yet been addressed by U.S.

Courts, in part because of the deliberate hurdles created by the Defendants, the Chilean


Supreme Court in Girardi v. Zemotiv Inc. (Chilean Supreme Court, August 9, 2023)

recognized that protection of 'neural activity,' as part of mental privacy under existing

constitutional and data, requires due diligence in handling. This landmark ruling suggests

neurodata collected by private corporations constitutes a form of surveillance and

highlights the need for specific legislation in the United States protecting cognitive privacy.


52. To date, there has been no effort among U.S. federal lawmakers to protect Americans'

cognitive privacy and property, and Plaintiff asserts that is wholly because they have

already given Americans' brain data to corporations by nonconsensually brainchipping

citizens and expanding FISA in March 2024 to legalize collecting data from wifi networks in

public spaces. Current Congressional wrangling to pass the Trump Administration's 'big

beautiful bill' includes effort by the Administration to outlaw individual states from passing

any law seeking to regulate artificial intelligence for 10 years -- Plaintiff asserts this is an

attempt to allow corporations and state actors to continue to profit from  stolen cognition

of nonconsensually chipped Americans.

Https://x.com/anandpanna1/status/1925825005675221018?s=46

53. While U.S. Courts have seemed willing to promulgated the idea that neural surveillance

is 'fanciful, fantastic and delusional' as they did in Maxey v. United States (E.D. Cal., 2015),

Plaintiff's provable nonconsensual neural and other bodily implants obviate that

discussion and must compel the

Court to grant her a Temporary Restraining Order to remove the multitude of

nonconsensual foreign objects from her body regardless of any skepticism of their

designed use.

54. Plaintiff argues that based on the totality of case law, the  implantations must be found

to establish proof of battery,  invasion of privacy, and cruel and unusual punishment.

55. The concept of 'legal non-persons' is  exploited by researchers and government officials

seeking a rationale for implanting and torturing citizens in the Darpa Brain Initiative.

Defendants' have deliberately, repeatedly and systematically promulgated the fallacy that

Plaintiff suffers from psychosis to hide human rights abuses and criminal behavior by government officials that will shock the world.

56. Under 18 U.S.C.§ 242, Defendants' are clearly, willfully and maliciously violating Plaintiff's Constitutional rights.

57. Medical imaging confirms 'foreign' materials in skull, arm, and Plaintiff's affidavit details nonconsensual implantation, theft of cognition and torture directly linked to Defendants' actions.

58. A SCADA Frequency Allocation test performed in 2015 by Melinda Kidder of Columbia Investigations of Missouri confirmed frequencies emanating from Elizabeth Coady's body at least 11 different bodily points.

59. In addition, Plaintiff is likely to succeed under Bivens v.

Six Unknown Named Agents, 403 U.S. 388 (1971), or the Administrative Procedure Act, 5 U.S.C. § 706, as multiple federal actors are involved.

60. Government Defendants have and continue to knowingly harm Plaintiff and to violate her privacy under provably falsified FISAS while lying to and about Plaintiff on police, medical, and other documents in order to mask ongoing nonconsensual crimes. Thus Plaintiff seeks a waiver of sovereign immunity under the Administrative Procedure Act, 5 U.S.C. § 702 for arbitrary agency action. Plaintiff has continuously reached out to federal officials who have willfully and wantonly refused to provide her recourse in any fashion and has copious evidence of that fact.

61. In Hamdi v. Rumsfeld (542 U.S. 507, 2004), the U.S. Supreme Court in a landmark case, jurists ruled that 'enemy combatants' could not be detained without Judicial review. Plaintiff asserts she was put on a terror watch list with deliberate, willful and wanton deceptions by state actors, and that Plaintiff's multiple electronic implants have effectively made her a detainee of the state for 12 years without judicial review.

62. Without this Court urgently granting a TRO, Plaintiff's only rationale recourses left would be to:

Seek medical intervention which, without question, would only end with her commitment to a psychiatric facility under false diagnoses to cover state crimes and

zero removal of offending tech. Or

2.  Be forced into the option of last resort, suicide. Plaintiff has never in her life

contemplated such self-harm and believes it would be a terrible legacy to leave her child.

Yet that is exactly what federal Defendant actors are attempting to do with thei relentless

everending intracranial assaults. If they succeed it would be a travesty and a crime.

B. Irreparable Harm

63. The 'injectable electronic' implants [https://
www.nature.com/articles/nnamo.2015.115] expose Plaintiff to nonstop radiation,

biochemical, and aerosolized nanoparticulates and 'nanoswarms' throughout her skull and

body, and in particular to her left side of face and skull while also activating hair-thin wires,

nanomaterials, graphene and rubber wifi capsules containing magnetic fluid and nano

implanted inside Plaintiff's skull.

64. Foreign objects and materials are PALPABLE and VISIBLE in Plaintiff's skull as is the

extreme heat inside her skull when active. Damage to her face, chest and neck are visible,

negating any question of whether her implants are real.

65. Through the use of semiotics, Plaintiff has been informed that 23 chemists were among the 'architects' of her interior, and that four PAMs have been issued by the Department of Energy for experimentation in her body.

https://www.energy.gov/science/portfolio-analysis-and-management-system-pams#:~:text=The%20Office%20of%20Science%20(SC,peer%20reviews%20of%20those%20proposals.

66. The nonconsensual materials in Plaintiff's face are deliberately and maliciously intended to cause Alzheimers, dementia, physical and mental disability, mental retardation, facial disfigureme, jaw cancer and to force plaintiff to suicide. These intentions have been communicated to Plaintiff repeatedly by intelligence sources and contractors using semiotics [https://en.wikipedia.org/wiki/Semiotics] such as memes, emails, tweets, license plates and clothing on a host of platforms including X, email, advertising, car license plates, signs, etc. Plaintiff has dozens if not hundred of examples of semiotic communications she has received but due to the extreme cranial torment she is enduring she must urgently bring this action and will only provide a small sampling of examples although she has hundreds of examples.

67. Monetary damages cannot remedy these permanent injuries. See City of Los Angeles v.

Lyons, 461 U.S. 95 (1983).

68. Without immediate relief, Plaintiff faces certain imminent disfigurement, disability and

death through cancer and/or probable suicide as the heightened radiation blasts to her

face are unsustainable to living a normal torture-free and productive life.

69. Plaintiff has endured extraordinary bodily assaults for 12 years with the level of

persistent assault now raised to their  highest levels ever. Should this Court deny her order

to remove offending devices, Plaintiff will have arrived at her last resort, making

Defendants' conspirators and complicit in extrajudicial murder. This should not be

happening in America.

C. Basis for Jurisdiction

70. Plaintiff is filing this federal action in Delaware because it is routinely the seat of

incorporation for United States corporations.

71. In the states where Plaintiff has largely resided since her targeting began -- Illinois and Pennsylvania -- Plaintiff has suffered direct physical, social, familial and financial harm by the direct actions of state and local officials including the deliberate manipulating of municipal properties and laws in order to access and harm Plaintiff physically.

72. Plaintiff's targeting is a case of personal revenge by President Barack Obama who was and is still widely considered head of the Democratic Party. Plaintiff has evidence that both city of Chicago officials and police and the State's Attorney General were directly involved in her targeting. The state's current Governor J.B. Pritzker also has donated $2 million dollars to two Illinois judicial elections.

73. In addition, Governor Pritzker and his family profit directly from Plaintiff's and others' stolen brain waves or cognition as the Pritzkers underwrite the University of Chicago's Pritzker School of Medicine which, through its infrastructure, collaborates with the Neuroscience Institute at UC on translational and clinical research. Plaintiff has personally had her brain waves collected by earbud-wearing brainwave harvesters or 'pirates' while visiting the Chicago campus who came within her vicinity to specifically harvest her brainwaves for 'machine learning.' Plaintiff's Neuralink is implanted and relays captured brain wave data via an implanted Bluetooth. https://www.telecoms.com/digital-ecosystem/bluetooth-powered-neuralink-completes-first-human-implant

74. In Pennsylvania, Plaintiff also has evidence officials in Philadelphia have targeted her personally, going so far as suspending an Airbnb rental she stayed in occasionally until host consented to install an oscillator to activate Plaintiff's nonconsensual implants.

75. City employees in Erie, Pa. also were directly involved in the vandalism of Plaintiff's car, and the Erie Police conspired with federal authorities to steal and destroy all of Plaintiff and her child's belongings accumulated over their lifetimes.

76. Plaintiff has video and audio evidence of her assertions, in particular the utter destruction of every bit of personal property, memento, art collection, and historic personal and familial artifact she and her child accumulated in their

lifetimes and will submit these shocking videos to the Court in an amended complaint upon approval of electronic filing.

D. Balance of Equities

77. The harm to Plaintiff from the implants outweigh any burden on Defendants, who face no legitimate hardship in ceasing unlawful conduct. See Winter, 555 U.S. at 24.

78. Ordering removal of illegal implants imposes minimal cost on Defendants compared to Plaintiff's suffering and imminent guaranteed death. Plaintiff must be awarded a TRO and regain control of her own cognition in order to begin repairing egregious balance of inequities perpetrated against her.

E. Public Interest

79. Granting relief to Plaintiff is essential to protect Plaintiff's, her daughter's and all Americans' Constitutional rights which have been quietly subverted by the government to the point of making America's foundational doctrine obsolete and quaint.

80. It is heavily in the public interest that Plaintiff and child be made whole at least as much as possible, and that federal authorities recognize the rights of Plaintiff Coady under the

Fourth, Fifth and Eighth and 14th Amendments.

81. Granting relief and a temporary restraining order against federal and state actors and private corporate and academic actors serves the public interest by protecting constitutional rights and bodily autonomy.

82. More than Plaintiff's rights are at stake: the United States Government has and is criminally and deceptively brainchipping and torturing at a minimum hundreds of thousands of citizens under false medical diagnoses and FISAS,  labeling subjects as 'terrorists' and mentally ill, and denying them any due process for the PROFITS of oligarchs and multinational corporations.  Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982).

83. Plaintiff avers that this Court's support of a TRO prevents further and repairs government misconduct, including nonconsensual implantation of Plaintiff who is 'beta one' among the minimum 200,000 Americans with brain chips and now possibly millions, and is essential  to protect Plaintiff, the Constitution, American citizens, as well the public trust.

84. Despite the 'translation' research and scientific breakthroughs accomplished since the Darpa Brain Initiative officially launched in 2013, Defendants have no legal, moral or

commercial right to frame Plaintiff first as terrorist then as psychotic for the predation of

her brain data.

85. Plaintiff requests an ex parte TRO under FRCP 65(b)(1) because notifying Defendants

risks retaliation, although, frankly, there are no secrets between Defendants and and

Plaintiff who has been under electronic surveillance due to falsified 'wraparound' FISAS,

and her brain activity is monitored in real time and has been for 12 years.

86. Plaintiff's brain has been literally

open-sourced since 2013 and her brain waves have been   distributed to the Darpa Brain

Initiative's more than 500 corporate, academic, military and medical partners and

potentially hundreds of thousands of scientists, physicists, technologists, neuroscientists,

psychologists, computer engineers and more -- an eyebrow-raising and jawdropping level

of personal privacy violation and an unqualified violation of Plaintiff's Constitutional rights.

87. Even Plaintiff's sexual orgasms are initiated, observed, collected, distributed and

studied, and were in fact used by the NIH in its 10th anniversary literature celebrating a

'decade of discovery.' https://braininitiative.nih.gov/sites/default/files/inline-

images/lightmeup.png

88. Plaintiff avers the first- place winning photograph entitled "Light Me Up!," by Andrew Janson, then graduate student research assistant, Scientific Computing and Imaging Institute, University of Utah, is based on her orgasm. [Exhibit 54]

89. While the original text that accompanied the award-

winning photo revealed it to be the brain activity during orgasm of a woman who had suffered a previous concussion, NIH and partners' accompanying text was changed to describe it merely as 'electrical excitation of neuronal fiber pathway' after Plaintiff Coady tweeted on X.com that it was her orgasm.

90. Plaintiff would provide the original text were the accounts on which she tweeted her assertion not recently been suspended on X without explanation. This is the type of semantical deceptions the NIH practices to disguise its mad science. Defendants have consciously and willfully lied about Plaintiff dating back at least to 2007.

91. Plaintiff has been nonconsensually and brazenly turned into a commodity much like a processed farm animal.

92.  In addition, Plaintiff has repeatedly received threats that her family would be harmed should she proceed with this lawsuit. She confronts a choice between forced suicide and leaving her child to suffer whatever malfeasance Darpa, CIA and NASA have planned for her, or risk seeking an injunction in this civil matter pursued pro se.

93. Plaintiff asserts TRO AND PERMANENT RESTRAINING ORDER SHOULD BE granted immediately and without delay as she is under nonstop physical, digital and neurological surveillance for political revenge and Defendants are aware she is preparing this complaint and extremely unhappy.

94. A TRO is necessary to halt the status quo until a preliminary injunction hearing.

CONCLUSION AND DEMAND FOR RELIEF

95. Plaintiff asserts that the totality of federal civil case law on unwanted medical implants and treatment affirms her right to be free and clear of these enslaving nonconsensual devices and the cognitive surveillance and cognitive theft they enable.

Thus Plaintiff respectfully requests the Court to:

a. Issue a temporary restraining order prohibiting Defendants from activating, operating, and maintaining the implants and ordering their immediate removal or deactivation within 3 days, and to order the return of Plaintiff's brain and biological data to Plaintiff and order the destruction of all her brain and biological data from public, private, government and academic databases;

b. Order Defendant Trump to cease any and all targeting, torture, surveillance of and theft of cognitive theft and distribution of brain data of Plaintiff by United States military and intelligence agencies undertaken unconstitutionally and under the cover of FISA or falsified medical diagnoses and for the benefit of government, personal or corporate profits, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological

data collected criminally and nonconsensually;

c. Order Defendant Obama to remove himself permanently from any surveillance or targeting activities against Plaintiff whom he targeted for the political patronage of Oprah

Winfrey and for financial reward from corporate interests interested in brain data, artificial intelligence and sadistic pleasure;

d. Order Defendant Kratsios to cease any and all targeting, torture, surveillance of and theft of cognitive theft and distribution of brain data of Plaintiff by United States military and intelligence agencies undertaken unconstitutionally and under the cover of FISA or falsified medical diagnoses and for the benefit of government, personal or corporate profits, to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from corporate, government and academic databases.

e. Order Defendant HEGSETH to command United States military under his command to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitionally allowing Plaintiff to be harmed and preyed upon, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological

data collected criminally and nonconsensually;

e. Order Defendant Department of Defense to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

f. Order Defendant Jordan to retain any and all correspondence, emails, audio, reports, texts, briefings in relation to Plaintiff and any correspondence, mail, phone calls, texts, letters, video or audio between himself and in particular with Defendant Musk;

g. Order Defendant Kennedy to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

h. Order Defendant Bhattacharya to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually, and to

to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

i. Order Defendant The National Institutes of Health to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

j. Order Defendant Ngai to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical

diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

k. Order Defendant Koroshetz, who has lied about Plaintiff's role on the Darpa Brain Initiative to government officials and employees, to immediately cease the surveillance, collection, analyses and distribution of any and all of Plaintiff's stolen brain or biological data to ANY National Institutes of Health in partnership with the Darpa Brain Initiative, the National Neurologic Conditions Surveillance Act, or any other contractual arrangement based on deliberately falsified FISAS or falsified medical diagnoses, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

j. Order Defendant National Institute of Neurological Disorders and Stroke to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain

data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

k. Order Defendant Grady to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

l. Order Defendant Petro to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the

Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National

Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing

Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's

brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and

destroy her brain and biological data collected criminally and nonconsensually;

m. Order Defendant Bondi to cease any and all surveillance and torture of Plaintiff

occurring under cover of falsified

'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative,

and under falsified medical diagnoses to traffic her in the National Neurologic Conditions

Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed

and preyed upon, and to cease and desist distribution of Plaintiff's brain data;

n. Order Defendant Barr to cease any and all surveillance and torture of Plaintiff occurring

under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the

Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National

Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing

Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's

brain data;

o. Order Defendant Holder to cease any and all surveillance and torture of Plaintiff

occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain

data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the

National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally

allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of

Plaintiff's brain data, and to retain all correspondence, emails, texts, audio, video between

Defendants Holder, Obama and Musk separately or jointly;


p. Order Defendant U.S. Department of Justice to cease any and all surveillance and torture

of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff

and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to

traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation

unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and

desist distribution of Plaintiff's brain data;


q. Order Defendant Patel to cease any and all surveillance and torture of Plaintiff occurring

under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the

Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National

Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing

Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's

brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and

destroy her brain and biological data collected criminally and nonconsensually;


r. Order Defendant Wray to cease any and all surveillance and torture of Plaintiff occurring

under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the

Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National

Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing

Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's

brain


data;


s. Order Federal Bureau of Investigations to cease any and all surveillance and torture of

Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and

her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic

her in the National Neurologic Conditions Surveillance Act, or any other legislation

unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and

desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological

data to Plaintiff and remove and destroy her brain and biological data collected criminally

and nonconsensually;

t. Order Defendant Ratcliffe to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

u. Order Defendant Burns to maintain any correspondence, audio, video, emails, texts, reports related to Plaintiff, and to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data;

v. Order Defendant Central Intelligence Agency to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical

diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

w. Order Defendant Burns to maintain any correspondence, audio, video, emails, texts, reports related to Plaintiff, and to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data;

x. Order Defendant Pichai to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and

remove and destroy her brain and biological data collected criminally and

nonconsensually;

y. Order Defendant Alphabet, Inc.to cease any and all surveillance and torture of Plaintiff

occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain

data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the

National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally

allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of

Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and

remove and destroy her brain and biological data collected criminally and

nonconsensually;

z. Order Defendant Google, Inc. to cease any and all surveillance and torture of Plaintiff

occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain

data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the

National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally

allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of

Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and

remove and destroy her brain and biological data collected criminally and

nonconsensually;

aa. Order Defendant Musk to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from his corporations' databases;

bb. Order Defendant Tesla, Inc. to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from the company's databases;

cc. Order Defendant Neuralink, Inc.to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the

National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from corporate, academic and government databases and archives;

dd. Order Defendant Thiel to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from company databases;

ee. Order Defendant Palantir to cease any and all

surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or

any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon,
and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain
and biological data to Plaintiff and remove and destroy her brain and biological data
collected criminally and nonconsensually;

ff. Order Defendant Blackrock Neurotech to cease any and all surveillance and torture of
Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and
her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic
her in the National Neurologic Conditions Surveillance Act, or any other legislation
unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and
desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological
data to Plaintiff and remove and destroy her brain and biological data collected criminally
and nonconsensually;

gg. Order Defendant Bill Gates to cease any and all surveillance and torture of Plaintiff
occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain
data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the
National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally
allowing Plaintiff to be harmed and preyed

upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

hh. Order Defendant The William and Melinda Foundation to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases;

ii. Order Defendant Microsoft to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases;

jj. Order Defendant IBM to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

kk. Order Defendant Nadella to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

ll. Order Defendant Bezos to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic

Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

mm. Order Defendant Amazon to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually;

nn. Order Defendant Northrup Grumman to Order to preserve all employment records related to its employee Sean Serrahn  surveillance, torture and targeting of Plaintiff, and cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases;

oo. Order Defendant Harvard University to cease any and all surveillance and torture of Plainfiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases;

pp. Order Defendant Stanford University to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and

her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases and archives;

qq. Order Defendant Massachusetts Institute of Technology to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionallly allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases and archives;

rr. Order Defendant University of Pennsylvania to to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to

cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases and archives;

ss. Order Defendant University of California at Davis to Order Defendant STANFORD UNIVERSITY to immediately cease the collection, analyses, distribution or resale of any and all of Plaintiff's brain or biological data which Defendant has collected, studied, distributed, archived and profited from since 2013, and  cease any and all surveillance, and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases and archives;

tt. Order Defendant Mayor Bradley Johnson to to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and

desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases and archives;

uu. Order Defendant City of Chicago to cease any and all surveillance and torture of Plaintiff occurring under cover of falsified 'wraparound FISAS' for inclusion of Plaintiff and her

brain data in the Darpa Brain Initiative, and under falsified medical diagnoses to traffic her in the National Neurologic Conditions Surveillance Act, or any other legislation unconstitutionally allowing Plaintiff to be harmed and preyed upon, and to cease and desist distribution of Plaintiff's brain data, and to return all Plaintiff's brain and biological data to Plaintiff and remove and destroy her brain and biological data collected criminally and nonconsensually from its databases and archives;

vv. Order Defendant Harrison to maintain all medical records created in the care of Plaintiff Coady and to order all records to be maintained and protected from revision as Plaintiff is aware of them already being hidden doctored and falsified;

ww. Order Defendant Chrisman to maintain all medical records created in the care of Plaintiff Coady and to order all records to be maintained and protected from revision as Plaintiff is aware of them already being hidden, doctored and falsified;

xx. Order Defendant Dr. Steven Flamm, now practicing at Rush University Medical Center, to maintain all medical records created in the care of Plaintiff and to order all records to be maintained and protected from revision as Plaintiff is aware of them already being hidden, doctored and falsified, and to identify the Dr. John Doe, the physician who attended Defendant Flamm during the implantation of nonconsensual devices;

yy. Order Dr. Kiran Nimmaggadda to maintain all medical records created in the care of Plaintiff Coady and or order all records to be maintained and protected from revision as Plaintiff is aware of them already being hidden and doctored and falsified;

zz. Order Dr. Kenneth Arbetter to maintain all medical records created in the care of Plaintiff and to order all records to be maintained and protected from revision as Plaintiff is aware of them already being hidden, doctored and falsified;

aaa. Order Defendant Jane Doe to maintain all medical records created in the care of

Plaintiff and to order all records to be maintained and protected from revision as Plaintiff is

aware of them already being hidden, doctored and falsified;

bbb. Order Defendant Dr. John Doe to maintain all medical records created in the care of

Plaintiff and to order all records to be maintained and protected from revision as Plaintiff is

aware of them already being hidden doctored and falsified;

ccc. Issue a permanent injunction after a hearing, granting the same relief until the case is

resolved;

ddd. Prohibit Defendants from contacting directly in any manner or indirectly through third

parties any medical providers to prevent or intervene in Plaintiff's attempts to

secure a surgeon or remove offending materials;

eee. Award compensatory and punitive damages amount determined at trial;

fff. Award reasonable attorney's fees and cost;

ggg. Schedule a hearing at the Court's earliest convenience;

ll. To order each defendant to make a full accounting of brain wave and other biological data harvested by Plaintiff and how it was used, distributed, resold, categorized, analyzed, documented in any format;

mm. Grant any further relief deemed just and proper.

RESPECTFULLY SUBMITTED,

Elizabeth COADY,  "Pro Se Plaintiff"

773-412-5326

ELIZABETHC@PROTONMAIL.COM

May 2025

1450 W. Hutchin Sra Ave
Chicago Il 6
60613